FILED

2009 May-21  PM 05:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| SUSAN BATTLES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 4:08-CV-930-VEH** |
| | ) | |
| DEKALB COUNTY | ) | |
| COMMISSION, | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

## I.    INTRODUCTION

Before the Court is the Defendant's Motion for Summary Judgment. (Doc. 17.) This case is brought under 42 U.S.C. § 1983 for violation of the Plaintiff's procedural due process rights.  Plaintiff, Susan Battles, was employed by the Defendant, the DeKalb County Commission, for several years before her discharge in 2008.  Plaintiff claims that her due process rights were violated because the Defendant provided inadequate procedures in the form of its post-termination review process.  Because the Court finds that Alabama courts could have provided an adequate remedy to cure any defects in the Defendant's post-termination process, the Defendant's motion is

1

due to be **GRANTED**.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v.*

2

*City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.    FACTUAL AND PROCEDURAL HISTORY[1]

---

[1]    These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the

Plaintiff Susan Battles ("Battles") began her employment with the DeKalb County Commission in 1993 as a member of the clerical staff in the DeKalb County Road Department and by August, 2003, she had been promoted to Emergency Management Director.  (Doc. 18, AF[2] 1.)  The DeKalb County Commission ("The Commission") is composed of five commissioners and is led by its President, Sid Holcomb ("Holcomb"), who is the only full-time commissioner.  (Doc. 18, AF 2.)  Battles's department, emergency management ("EMA") worked under the direct supervision of the Commission.  (Doc. 18, AF 3.)  As EMA director, Battles reported directly to the Commission.  (Doc. 18, AF 4.)

According to the County's Personnel Policy Manuel, (Doc. 19, Ex. C), a pre-deprivation hearing was required for any employee separated from his or her employment.  As part of this process, an employee to be terminated was permitted to have a meeting with his or her immediate supervisors and was to be given a reason

---

summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[2]   The designation "AF" stands for admitted fact and indicates a fact offered by the moving party that the non-movant has admitted in written submissions on summary judgment, or by virtue of any other evidence offered in support of the case.  Whenever the non-movant has adequately disputed a fact offered by the movant, the court has accepted the non-movant's version.  The court's numbering of admitted facts (e.g., AF 1) corresponds to the numbering of the movant's Statement of Facts as set forth in Doc. 18 and responded to by the nonmovant in Doc. 22.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF 5.2) would indicate the second sentence of paragraph 5 of Defendants' Statement of Facts is the subject of the court's citation to the record.  Any other facts referenced by the parties that require further clarification are dealt with later in the Court's opinion.

for dismissal and an opportunity to respond in writing.  (*Id.*)  Additionally, the handbook requires a post-termination hearing to occur within fifteen days of discharge, to be conducted by the Commission, with the employee's immediate supervisor present and at which time "all charges and/or reason for termination will be heard."  (*Id.*)  The manual does not specify the procedure to be used when the Commission discharges an employee or how an appeal should proceed when this is the case.  (*Id.*)

In June, 2004, Battles was suspended for two weeks for using profanity to describe other employees and supervisors; Battles was reminded that this type of conduct "[was] not becoming of someone in [her] position."  (Doc. 19, Ex. E.) Battles was also warned that additional behavioral problems would result in her termination.  (*Id.*)  In July, 2006, Battles's election duties were taken from her because, according to the County Administration, Matt G. Sharp, the "pressures of [her] duties [were] having a negative effect on [her]."  (Doc. 19, Ex. F.) Sharp also added that "[o]ur attitudes toward election and party officials have to be respectful and neutral.  I'm not sure if we see those things in the same light."  (*Id.*)  Battles received a hearing on the matter and the decision to strip her of her election duties ultimately stood.  (Doc. 19, Battles Dep. at 32:11-19.)

On March 4, 2008, Battles was notified by Holcomb that he was considering

termination of her employment based upon (1) "Repeated and continued refusal or failure to perform job duties which are aimed at preparing DeKalb County and its citizens for emergency situations;" (2) "Misuse or fraudulent use of leave or absence without authorized leave;" (3) "Misuse, including excessive personal use, of county vehicle, documents, equipment and facilities;" and (4) "Insubordination by way of conduct with stated purpose of humiliating county officials." (Doc. 19, Ex. G.) Holcomb's letter also advised Battles of her opportunity to respond in writing to the charges and of her right to meet with Holcomb to discuss the issues on March 5, 2008. (*Id.*)

The same day that she received notice of the charges, Battles's attorney sent a letter to Holcomb advising him that he and his client needed additional time to respond to the charges; Holcomb obliged in this request. (Doc. 18, AF 13-14.) Via a second letter, in which a date for the rescheduled hearing was set, Holcomb also provided Battles with greater detail of the charges, since her counsel's letter maintained that they were unclear. (Doc. 18, AF 14; Doc. 19, Ex. I.) In this letter, Holcomb pointed to several specific incidents that he believed gave rise to the charges stated in his March 4, 2008, letter. Among others, these incidents included changing locks on County facilities and taking documents from the EMA office, using County computers excessively for personal activities, and using a County

7

vehicle for the stated purpose of attending meetings but not attending those meetings. (*Id.*)

The pre-deprivation hearing was held on March 11, 2008, and, at the hearing, Battles refused to respond to the items listed.  (*Id.*; Doc. 19, Ex. K.)  Her attorney took extensive notes and stated that Battles wished to respond in writing.  (Doc. 19, Ex. K.)  Therefore, on March 18, 2008, Battles responded to the charges via a short letter, merely stating that the allegations were "factually inaccurate" and that there had been no reference to any specific County policy that Battles had violated.  (Doc. 19, Ex. J.) Holcomb subsequently terminated Battles on March 18, 2008, via letter. (Doc. 19, Ex. K.)  Although Battles reported to the County Commission, she was terminated by Holcomb without consultation of the Commission.  (Doc. 19, Holcomb Dep. at 33:7-34:12.)   Holcomb does not know whether he had the authority to terminate an employee without a vote of the Commission.  (Doc. 44-17-21.)

Battles's attorney requested a hearing regarding the termination before a body other than the Commission because the members of the Commission had "an inherent conflict of interest" and because Battles's attorney attempted to call members of the Commission as witnesses.  (Doc. 19, Ex. L.)  Holcomb admitted that he attempted to solicit a potential panel member, Jimmy Lindsey, who ultimately did not serve, about participating on the panel.  (Doc. 19, Holcomb Dep. at 86:4-16.)

On March 26, 2008, DeKalb County's attorney, W.N. Watson ("Watson"), informed Battles's attorney that the policy of the County was to try post-termination appeals before the Commission and that the Commission was not the body authorized to terminate Battles–Holcomb, as supervisor of Battles, was the person authorized to terminate her.  (Doc. 19, Ex. M.)  Further, the letter explained that Holcomb would not be on the panel and asked for further explanation of whether other members of the Commission were going to be witnesses in the proceedings.  (*Id.*)  Watson's letter added that, without any additional information,  the Commission would be the body to hear the appeal.  (*Id.*)

Battles's attorney replied that the Commission "has information <u>directly</u> related to Ms. Battles'[s] job requirements, performance and the allegations made against her."  (Doc. 19, Ex. N (emphasis in original).)  The letter then proceeded to provide several examples of how the Commission might be directly involved as witnesses at the hearing, such as the allegation that Battles had engaged in activities to humiliate the Commission.  (*Id.*) Summarizing her position, Battles's attorney wrote that "<u>there is no way Ms. Battles can get a fair and impartial hearing which would protect her right to due process should she be prevented from calling commissioners as witnesses or should the same witnesses sit in judgment of the matter</u>." (*Id.* (emphasis in original).)

Taking these objections into account, Holcomb approached the other Commisioners about turning the matter over to the County attorney, who would appoint a new panel. (Doc. 18, AF 22.) All members of the Commission agreed. (*Id.*) Watson thereafter notified Battles's attorney that he had been authorized to appoint a five-member panel and that a hearing would be held on June 13, 2008. (Doc. 18, AF 23.)

On June 9, 2008, Battles's lawyer responded, objecting that the date had been unilaterally set and was too soon, that having the Commission's lawyer pick the panel would not be fair, and that he believed that Holcomb had been personally soliciting people to serve on the panel. (Doc. 19, Ex. P.) Therefore, Battles explained that she would not participate in the hearing. (*Id.*)

Watson responded to this letter on June 10, 2008, asking Battles to reconsider her decision and assuring her that he alone had picked the members of the panel (whose names he disclosed) and further explaining that the date for the hearing could be changed if the date represented a conflict or was inconvenient. (Doc. 19, Ex. Q.) Members of the proposed panel included: Billy Smothers, Sr., Mayor of Geraldine, Alabama; Lisa McCurdy, Mayor of Ider, Alabama; Mark Ford, Chief Operations Officer for DeKalb Ambulance Service; Jim Russell, Former Director of the DeKalb County Health Department; and Chris Kuykendall, a local State Farm Agent. (Doc.

10

18, AF 26.)

Battles contended that members of the panel were biased because Smothers and McCurdy, then sitting mayors of towns in DeKalb County, were dependent upon the Commission for paving, bridge, and other road work projects. (Doc. 19, Battles Dep. at 11-76:9.)  Further, Battles contended that Ford was biased because the two had a disagreement in 2007 regarding money in a grant from the United States Department of Homeland Security.  (Doc. 19, Battles Dep. at 76:10-20.)  Battles did not have objections to Russell or Kuykendall.  (Doc. 19, Battles Dep. at 76:20-21.)  Battles ultimately declined to participate in any hearing because she had already filed the instant case for violation of her procedural due process rights.  (Doc. 19, Ex. R.)

Battles initiated this case on May 28, 2008, asserting both procedural due process claims and equal protection claim through the vehicle of 42 U.S.C. § 1983. (Doc. 1.)   The procedural due process claims encompassed both Battles's pre-termination due process rights and her post-termination due process rights.  (*Id.*)

The Commission filed a Motion to Dismiss. (Doc. 4.) In a Memorandum Opinion and Order dated August 27, 2008, this Court granted the Defendant's motion in part–dismissing all pre-deprivation due process claims as well as Battles's equal protection claim.  (Doc. 11) However, it denied the motion insofar as it pertained to

Battles's post-termination due process claims.  (*Id.*)

## IV.   ANALYSIS

"The Due Process Clause is the source of three types of Section 1983 claims: (1) violations of incorporated provisions of the Bill of Rights; (2) violations of its substantive component; and (3) violations of its procedural component." *Burch v. Apalachee Community Mental Health Servs., Inc.*, 840 F.2d 797, 800 (11th Cir.1988) (en banc), *aff'd sub nom. Zinermon v. Burch*, 494 U.S. 113 (1990). Plaintiff's due process claim is of the third variety, for violation of her procedural rights.  There are at least four elements of such a claim: (1) persons acting under color of state law (2) deprived plaintiff (3) of property (4) without due process of law. *See Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327(1986)." *Hicks v. Jackson County Com'n,* 374 F.Supp. 2d 1084, 1088 -1089 (N.D. Ala. 2005); *see also Mathews v. Eldridge*, 424 U.S. 319 (1976) (identifying the same framework for procedural due process violations).  In the instant case, the only dispute is whether Battles was deprived of her employment without post-termination due process of law. (*See* Doc. 18 at 16-20.)   The Court now turns to this inquiry.

Defendant contends that the Eleventh Circuit's *en banc* decision in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) forecloses the possibility of a procedural due

process claim because Alabama courts, as a matter of law, can provide an adequate remedy for Battles's procedural deprivation.  (Doc. 18 at 18.)[3]  A full discussion of *McKinney* is warranted because of its close similarity to Battles's case and the decision's critical importance to the outcome of this case.

In *McKinney*, the plaintiff, McKinney, was a former employee of Osceola County, Florida, who was terminated from his position as a building official due to poor performance.  *Id.* at 1554-1555.  The County Board of Commissioners held hearings and ultimately upheld the charges listed in the notice of dismissal provided to McKinney.  *Id.* at 1555.  Believing that he was terminated because of an improper political bias, McKinney filed his claim in federal court, alleging a substantive due process violation under 42 U.S.C. § 1983. *Id.*  A jury trial was held on this claim and the plaintiff prevailed, but the district court entered judgment as a matter of law on behalf of the defendants.  *Id.*

The Eleventh Circuit initially recognized that the procedural component of the due process clause controlled and not the substantive component.  *Id.* at 1561.  The Court then turned to McKinney's allegation that his termination hearings were biased

---

[3]  Although Defendant also made arguments that Battles received all of the process to which she was entitled (Doc. 18 at 16-18), that she waived her right to due process by failing to participate in the Commission's post-termination hearing (Doc. 18 at 20-22), and that the Commission's post-termination procedures are adequate (Doc. 18 at 22-30), the Court does not reach these arguments because it is clear that, under *McKinney*, Battles is not entitled to proceed with her procedural due process claims.

and that he therefore did not receive the process he was due. *Id.* at 1562. The Court recognized that "[a] demonstration that the decisionmaker was biased . . . is not tantamount to a demonstration that there has been a denial of procedural due process [, since] procedural due process violations do not become complete unless and until the state refuses to provide due process." *Id.* at 1562 (internal quotations and citations omitted). The court further noted that "in the case of an employment termination case, 'due process' does not require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obligated only to make available the 'means by which [the employee] can receive redress for the deprivations.'" *Id.* In light of this conclusion, the court noted:

> [E]ven if McKinney suffered a procedural *deprivation* at the hands of a biased Board at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the [state] refuses to make available a means to remedy the deprivation. As any bias on the part of the Board was not sanctioned by the state and was the product of the intentional acts of the commissioners, under *Parratt*, only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation.

*Id.* (emphasis in original).

The court then noted that McKinney had "failed to take advantage of any state remedies" and it therefore addressed the issue whether any available state remedies were adequate. *Id.* In making this determination, the court first found that a Florida

14

court, through a writ of *certiorari*, could remedy the alleged deprivations–it could order a new hearing. *Id.* Next, the court noted that the scope of the Florida Court's review power encompassed McKinney's Section 1983 claim. *Id.* Finally, the court noted that the state law remedy was adequate, since the Florida courts "possess the power to remedy McKinney's loss both in terms of damages and equitable relief." *Id.* at 1564. Thus, the court concluded that "McKinney's state remedy was capable of providing McKinney with all the relief warranted. Even if McKinney's bias allegations are true, the presence of a satisfactory state remedy mandates that we find no procedural due process violation occurred." *Id.*

The Eleventh Circuit applied *McKinney* in the context of another case with similar facts to Battles's case in *Cotton v. Jackson*, 216 F.3d 1328 (11th Cir. 2000) (*per curiam*). There, an employee sued a state college president and the board of regents for terminating him based on allegations of sexual harassment without an opportunity for a hearing. The court concluded that "because adequate state remedies were available to provide Plaintiff with the opportunity for a name clearing hearing, he has failed to state a procedural due process claim." *Id.* at 1330. In reaching this decision, the court relied upon *McKinney*, noting that it amounted to "a recognition that procedural due process violations do not even exist <u>unless no adequate state remedies are available</u>." *Id.* at 1331 n.2 (emphasis added). It further concluded that

15

"the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation." *Id.* at 1331.  Because the writ of mandamus would have been available to the plaintiff under Georgia law and because the writ could have ensured that the plaintiff was not deprived of his rights, the court found that the plaintiff could not state a due process claim.  *Id.* at 1333.

More recently, in *Reams v. Irvin*, 561 F.3d 1258 (2009), the Eleventh Circuit applied *McKinney* in discussing a challenge to post-deprivation remedies provided by the state.  In *Reams*, the plaintiff was an owner of horses that were seized by the Georgia Department of Agriculture.  As part of her claim, she argued that she had to wait more than seven months before her initial hearing, and she was not allowed to subpoena evidence or witnesses or present her case to an unbiased decisionmaker. *Id.* at 1266.   The Court assumed for the sake of argument that the administrative process provided by the state had indeed been inadequate but, citing *McKinney*, it recognized that the critical question was "whether the state provided [the plaintiff] with the means to present her allegations, demonstrate that the impoundment was wrongful, and receive redress from that deprivation."  *Id.*  The court found that judicial review provided by the Georgia Administrative Procedures Act could

16

corrected any deprivation and, therefore, there was no due process violation. *Id.* at 1267.

Defendant claims that *McKinney* and its progeny foreclose the possibility of a due process violation because Alabama's post-termination judicial review through writ of *certiorari* has been established as adequate as a matter of law. (Doc. 18 at 19.) Battles, although she has submitted a brief in opposition to the Defendant's motion, has entirely failed to respond to the Commission's arguments on this point and has cited to scant legal authority in support of her own non-responsive positions.

The Court agrees with the Defendant's argument. In *Bell v. City of Demopolis, Ala.*, 86 F.3d 191 (11th Cir. 1996), the Eleventh Circuit unequivocally recognized that Alabama courts, like the Florida courts in *McKinney*, "review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process." *Id.* at 192 (citing *Ex Parte Tuskegee*, 447 So. 2d 713 (Ala. 1984); *Guinn v. Eufaula*, 437 so. 2d 516 (Ala. 1983)); *see also Evans v. City of Huntsville*, 580 So.2d 1323, 1325 (Ala.1991) (noting that on writ of certiorari to a Alabama Circuit Court, the court is "responsible for reviewing the record to ensure that the fundamental rights of the parties, including the right to due process, [have] not been violated."); *Hicks v. Jackson County Commission*, 374 F. Supp. 2d 1084, 1092 (N.D. Ala. 2005) (noting

that the State of Alabama, under *McKinney*, provides "an adequate post-deprivation remedy to correct the Commission's earlier procedural violation."). Based on the above-cited authority, the Court finds that Alabama courts could have provided an adequate post-deprivation remedy for any inadequacies in the review provided by the DeKalb County Commission. Therefore, Battles's due process claim cannot succeed and her claim is due to be dismissed.

## V.   CONCLUSION

Summary Judgment is due to be **GRANTED** in favor of the Commission. Alabama courts, as a matter of law, could have provided Battles with an adequate remedy to correct any deficiencies in the post-termination process provided to her by the DeKalb County Commission. Under the Eleventh Circuit's decision in *McKinney v. Pate*, this means that her claim cannot succeed. A separate order, consistent with this Memorandum Opinion, will be entered.

**DONE** and **ORDERED** this the 21st day of May, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge